NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | : | |
| INES Y. RODRIGUEZ DEAGUILU, | : | |
| | : | |
| Plaintiff, | : | Hon. Dennis M. Cavanaugh |
| | : | |
| v. | : | **OPINION** |
| | : | |
| | : | Civil Action No: 09-3227 (DMC) |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon the appeal of Ines Y. Rodriguez DeAguilu ("Plaintiff") from the final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), and for Supplemental Security Income ("SSI") under Title XVI of the Act.  This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure.

As detailed below, the final decision entered by Administrative Law Judge ("ALJ"), Dennis O'Leary, is **reversed**.

## I.  BACKGROUND

### A.  PROCEDURAL HISTORY

On January, 24, 2006, Plaintiff filed applications for disability insurance benefits and supplemental social security insurance benefits, alleging disability beginning July 26, 2005. (Tr. 97, 100). Both applications were denied initially on October 3, 2006, and then upon reconsideration, on March 6, 2007. (Tr. 14). Thereafter, Plaintiff filed a timely written request for a hearing. (Tr. 69). Plaintiff appeared and testified at the hearing on May 7, 2008 before ALJ Dennis O'Leary. (Tr. 24). At the close of the hearing, the ALJ held the record open to obtain a vocational interrogatory from Mr. Rocco Meola, an impartial vocational expert, and to allow Plaintiff's attorney to obtain updated medical records from Dr. Peterson and Dr. Nagendra. (Tr. 14). On May 19, 2008, Mr. Meola submitted responses to the interrogatory, which were made part of the record. Dr. Peterson's medical records were also entered into the record. No material was submitted by Dr. Nagendra and the record was closed. The ALJ issued an unfavorable decision on June 25, 2008. (Tr. 14-23), finding that Plaintiff was not disabled in accordance with 20 C.F.R. §§ 404.1520(g) and 416.920(g). (Tr. 23). Plaintiff filed a request for review by the Appeals Council on August 10, 2008 (Tr. 7), which the Appeals Council denied on May 11, 2009, finding no grounds for review (Tr. 1-3). District action was thereafter timely commenced and this matter is now properly before the Court.

### B. FACTUAL HISTORY

#### 1. The findings of the Administrative Law Judge

ALJ O'Leary made the following eleven findings regarding Plaintiff's DIB and SSI applications: (1) Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2010; (2) Plaintiff has not engaged in substantial gainful activity since her alleged

onset date, July 26, 2005; (3) Plaintiff has residuals of lumbar disc disease, with radiculopathy, status post L5-61 anterior posterior decompression, instrumentation, and fusion, which is a severe impairment; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff has the residual functional capacity to perform sedentary work, except that the job must be one where she can alternate standing and sitting at her election, as well as do simple and repetitive tasks; (6) Plaintiff is unable to perform any past relevant work; (7) Plaintiff was born on February 19, 1964, and was 41 years old, which is defined as a younger individual age 18-44, on the alleged onset date of the disability; (8) Plaintiff has a limited education and is able to communicate in English; (9) transferability of job skills is not an issue because Plaintiff's past relevant work is unskilled; (10) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers that she can perform; and (11) Plaintiff has not been under a disability, as defined in the Social Security Act, since July 26, 2005, the alleged disability onset date. (Tr. 16-23).

## 2. **Plaintiff's Medical History and Evidence**

Plaintiff alleges that she has been disabled since July 26, 2005, the date she stopped working, (Tr. 14, 111), as a result of a motor vehicle accident that occurred on May 28, 2005 (Tr. 34). Plaintiff's medical history and the evidence pertaining to her impairment are summarized below.

### i. *MRI - July 25, 2005*

On July 24, 2005, Plaintiff had a MRI Lumbar Spine examination performed. (Tr 193, 277). The examination revealed "small posterior disc herniation centrally and to the right side with indentation of the right S1 nerve root at the L5-S1 level." Id.

3

### ii. *EMG - September 9, 2005*

On September 9, 2005, Plaintiff underwent a EMG/NCV examination. (Tr. 192, 275-76). The EMG and nerve conduction studies of the lower extremities "demonstrated a right L5-S1 radiculopathy with active denervation." (Tr. 192).

### iii. *Treatment by Dr. Bello - September through December 2005*

Plaintiff was referred to Dr. Bello, who began treating her in September 2005. (Tr. 289-91). In subsequent visits, Dr. Bello administered three epidural injections, on September 30, October 7, and October 14, 2005, to treat Plaintiff's lumbar disc disease with radiculopathy. (Tr. 282-88). In between the first and second epidural injections, Dr. Bello observed that Plaintiff's improvements were "significant in relation to the lower back, buttock, and lower extremities pain." (Tr. 284). Dr. Bello reported a decline in Plaintiff's pain by "about 50%." Id. Between the second and third injections, Dr. Bello, again observed significant improvement with Plaintiff's pain and reported a decline in pain by "about 60%." (Tr. 282).

In a follow-up examination, on November 14, 2005, Dr. Bello stated that Plaintiff's "pain started again and seems to be worsening. The pain is worse in the midline of lumbar area which is aggravated by standing, sitting and lying down." (Tr. 279). Dr. Bello noted "possible discogenic pain from internal disc displacement which is the primary pain generator now." (Tr. 279). Dr. Bello, also recommended that Plaintiff see Dr. Dauhajre. (Tr. 280).

In another follow-up examination, on December 19, 2005, Plaintiff still complained of lower back pain that radiated at the waist, right thigh, and groin. (Tr. 273). Plaintiff voiced that the pain was aggravated when she walked or when she got up. Id. She also complained of severe pain when lying down, which forced her to sleep on her side, but said she experienced less pain when she was

4

sitting down.  (Tr. 273).  Plaintiff also stated that extending her back triggered discomfort.  Id.  Dr. Bello observed "lumbar facet antropathy."  Id.  Additionally, he recommended a lumbar facet joint/medical branch block to localize the cause of Plaintiff's pain.  (Tr. 274).  If the severe pain continued, Dr. Bello noted that a discogram and possible percutaneous discectomy should be considered. (Tr. 274).

On December 30, 2005, Dr. Bello performed a facet joints/medical branch block at bilateral levels L3, L4, and L5.  (Tr. 269-70).  After the procedure, Plaintiff had an eighty-percent reduction in pain and Dr. Bello noted that Plaintiff was a good candidate for medical branch radiofrequency ablation.  (Tr. 270).

### iv.  *Examinations by Dr. Dauhajre*

Plaintiff was examined on multiple occasions by Dr. Dauhajre from June 2005 through November 2005.  (Tr. 191-203).  The initial examination occurred on June 7, 2005.  (Tr. 199). Plaintiff complained of infrequent neck pain, with "intermittent paresthesias down the left upper extremity to the level of the left mid arm."  Id.  Plaintiff also complained of lower back pain with varying degrees of intensity, with "intermittent paresthesias down the right lower extremity to the level of the right ankle, and the left buttock."  (Tr. 200).  Plaintiff indicated that walking fast or getting up from a bent position would aggravate her lower back pain but coughing, sneezing, or Valsalva maneuvers would not increase the pain.  Id.  Plaintiff had additional visits on July 12, 2005, August 9, 2005, and October 31, 2005, in which she stated she still had the same lower back pain. (Tr. 195-98, 202-03).

Plaintiff returned for an evaluation on November 8, 2005, complaining of the "same constant lower back pain" and "intermittent radicular pain and paresthesias down the right lower extremity

5

to the level of the right foot toes." (Tr. 191). A physical examination of the lower back revealed: forward flexion of 80 degrees; Plaintiff was unable to reach her toes with her fingers by four inches; there was interspinous tenderness between L5 and S1; no spinous or sciatic notch tenderness; no muscle spasms; the motor and sensory for L4 through S1 were "grossly within normal limits"; and "negative straight leg raises." Id. Dr. Dauhajre also recommended that Plaintiff obtain a second opinion with an orthopedic spinal surgeon. (Tr. 192).

### v. *Examinations by Dr. Orlikowski - July 2005 through February 2006*

Dr. Jeffrey Orlikowski, a chiropractor, examined Plaintiff on a few occasions. (Tr. 208-17). On November 3, 3005, Dr. Orlikowski indicated that Plaintiff would be able to return to work on December 4. (Tr. 216). After Plaintiff's February 6, 2006 examination, Dr. Orlikowski indicated that Plaintiff could not sit for more than half an hour without discomfort, stand or walk for more than two hours a day or lift more than ten pounds. (Tr. 209). He also stated that Plaintiff was limited and unable to walk for long distances. (Tr. 213). Dr. Orlikowski concluded that Plaintiff could not continue to work in her job as a homemaker, as she is unable to perform activities such as mopping or vacuuming. (Tr. 209).

### vi. *Disability Determination Services Assessment by Dr. Vasallo*

On September 19, 2006, Plaintiff was evaluated by Dr. Vassallo, at the request of Disability Determination Services. (Tr. 218). Plaintiff claimed she had constant lower back pain which extended to both of her legs, that she could not stay seated for more than fifteen minutes, remain standing for more than 20 minutes, or walk more than two blocks. (Tr. 219).

During the examination, Dr. Vasallo found that Plaintiff walked and sat stiffly, had difficulty bending her back, used a cane easily, but could walk on her tippy toes and heels, squat, and keep her

6

back straight.  Id.

Dr. Vasallo concluded that Plaintiff had a history of "hypertension with chronic lumbar sacral pain with a right sciatic syndrome, due most probably to disc pathology."  Id.  He also determined that Plaintiff did not need an assistive device to help her walk, and that she was able to use both hands for fine and gross manipulation.  (Tr. 219-20).

An x-ray determined that Plaintiff had no evidence of a fracture or malalignment, the disc spaces were intact, and the pedicles were preserved.  (Tr. 223).  As a result, it was determined she had a "normal lumbosacral spine."  Id.

### vii.  Radio Frequency Ablation Treatment by Dr. Bello

Plaintiff, on July 27, 2006, visited Dr. Bello for a follow-up examination, still complaining of severe back pain, even after she had physical therapy, which she said did not help her much.  (Tr. 247).  She said that the pain increased when she extended her back.  Id.  Plaintiff decided to undergo radiofrequency ablation, which Dr. Bello had previously recommended.  Id.

On August 18, 2006 and September 29, 2006, Plaintiff underwent the radiofrequency ablation procedure.  (Tr. 239, 244).  In follow-up visits to both procedures, on September 14, 2006 and October 6, 2006, Plaintiff indicated a decrease in the pain in her lower back, as well as her lower extremities.  (Tr. 237, 242).  On October 6, 2006, Dr. Bello told Plaintiff that she had "a large disc herniations at L5-S1," which could cause discogenic pain.  Id.  Dr. Bello also noted that Plaintiff was advised by Dr. Petersen to have surgery, but she had not yet decided how to proceed.  Id.  Dr. Bello also discussed Endoscopic Laser Discetomy with Plaintiff.  Id.

On November 6, 2006, Plaintiff returned to Dr. Bello, complaining of midline lower back pain, which she said occurred in any position that she was in.  (Tr. 234).  Plaintiff also stated that she

was in pain when she walked, which limited her to walking only one block at a time.  Id.  Dr. Bello

noted that Plaintiff walks her daughter to school but she feels more pain when she returns home.  Id.

Dr. Bello recommended that she consult with Dr. Peterson regarding surgery options.  Id.  Dr. Bello

also observed that a MRI conducted on February 24, 2006 of Plaintiff's lumbar spine, (Tr. 319),

showed "right paramedian disc herniation at L5-S1 displaces the right S1 nerve root; mild to

moderate disc bulging at LF4-5 results in some asymmetric compromise of left neural foramen when

compared to right without distinct evidence of focal disc herniation."  (Tr. 234).

### viii.   Diagnostic Discography - January 5, 2007

On January 5, 2007, Dr. Bello conducted a diagnostic discography at the L3-L4, L4-L5, and

L5-S1 levels.  (Tr. 316).  After the procedure, Dr. Bello concluded that the report demonstrated:

"normal discogram at L3-L4 levels with no concordant pain, and normal discogram at L4-L5 with

equivocal pain pattern; abnormal discogram with concordant pain with normal-grade 1 discogram

pattern."  (Tr. 317).

### ix.   Fusion Surgery

On March 23, 2007, Dr. Peterson performed a procedure of L5-S1 anterior interbody

instrumentation and fusion with Synthes titanium ring, pyramid plate, followed by posterior pedicle

screw instrumentation and laminotomy, in response to Plaintiff's L5-S1 degenerative disc with

instability.  (Tr. 305).  Dr. Peterson noted that Plaintiff's postoperative course was "remarkable for

immediate significant improvement in her back pain" and that Plaintiff had minimal leg pain.  Id.

Additionally, the postoperative CT scan showed that the cages and screws were in a good position.

(Tr. 305, 315).

x.  *Postoperative Physical Therapy*

Following surgery, Plaintiff began physical therapy sessions at Dynamic Care Physical Therapy on Dr. Peterson's recommendation.  (Tr. 327-380).  Plaintiff attended from July 13, 2007 through November 5, 2007.  (Tr. 327, 349-52).  She received therapy for strengthening, electrical stimulation, TENS unit, and manual modalities.  (Tr. 327, 333).  On a progress report from September 4, 2007, Dr Peterson noted that Plaintiff showed improvement of thirty-five percent and that she was able to perform some activities of daily life and household chores better.  (Tr. 327, 349-52).  Another progress report from Dr. Peterson, on October 17, 2007, indicated Plaintiff's improvement at forty-to-forty-five percent and that she was able to use the treadmill for at 1.1 miles per hour.  (Tr. 333).

xi.  *Plaintiff's Evidence*

Plaintiff submitted multiple reports into evidence before the ALJ from doctor visits in 2008.  (Tr. 382-404).  On November 12, 2007, Plaintiff had a right trochanteric bursae injection procedure for her "lumbar myofascial pain, with radiculopathy," which was conducted by Paulison Pain Management & Rehab Center.  (Tr. 385).  On March 28, 2008, the Center performed a bilateral lumbar facet joint injection at L5-S1 on Plaintiff for her "lumbar facetal joint anthropathy and pain."  (Tr. 395).

### 3.  Plaintiff Ines Rodriguez-DeAguilu's Testimony

At a hearing before the ALJ on May 7, 2008, Plaintiff indicated, through an interpreter, that she was born in the Dominican Republic in 1964, and came to the United States in June of 1981.  (Tr. 30).  Plaintiff stated that she was one year short of completing high school in the Dominican Republic.  (Tr. 31).  She explained that she took computer and English courses since entering the

United States.  (Tr. 46).  Plaintiff indicated that she reads and writes in Spanish, but only understands English a little and can read a bit of English, but writes very little in English.  (Tr. 31).

Plaintiff said that she lives in an apartment with her eleven-year old daughter, and another daughter lives in an apartment downstairs from her.  (Tr. 31-32, 41).  Plaintiff used to live with another daughter, but she moved out a week before the hearing.  (Tr. 47).  Plaintiff testified that two of her daughters would clean for her and do the laundry.  (Tr. 39).  She noted that she cooks food that is fast to cook, but that she is unable to lift heavy pots.  Id.  Plaintiff explained that she would go grocery shopping with her two daughters and point out items she needed, but the daughters would push the cart.  Id.  Further, Plaintiff stated that she needs her daughter's assistance to help her tie her shoes.  (Tr. 41).

Plaintiff indicated that she stopped working in July of 2005, as a result of a car accident in May of that year.  Since the accident, Plaintiff testified that she has experienced strong pain in her back, pain in her right leg all the time, and pain sometimes in her left leg.  (Tr. 34-35).  Plaintiff explained that before stopping work, she was a homemaker who would care for patients in their homes—performing tasks such as cooking, cleaning, giving them their medication, and assisting with their physical therapy.  (Tr. 32).  But Plaintiff noted that she did not have to lift patients or help them get out of bed.  Id.  Plaintiff stated that she was a homemaker for seven months and prior to that she worked as a sewing machine operator for at least ten years.  (Tr. 33-34).

Plaintiff indicated that she still has "unbearable" pain, even after having surgery and undergoing physical therapy.  (Tr. 35-36).  Plaintiff testified that she has taken Percocet and Flexeril for two-and-a-half years and a prescription gel to relieve her pain for about two months.  (Tr. 42).  She also explained that she is seeing a pain specialist who injects her with a shot every fifteen days

in her back and legs, however, Plaintiff stated that the injections help her very little.  (Tr. 45).

Plaintiff explained that she could not sit for longer than twenty minutes without needing to stand and that she was unable to stand for more than twenty minutes, and sometimes less, without having to sit.  (Tr. 37).  Plaintiff testified that she is unable to bend or squat and that the most she can lift is a gallon of milk, but not repeatedly over the course of an hour.  (Tr. 45-46).  She also indicated that she cannot walk two blocks because it makes her tired and that she walks with a cane, because she would fall without it, though she noted she had not fallen yet.  (Tr. 37-38).  Plaintiff said that she could only drive short distances because she was unable to drive for more than thirty minutes without stopping because her right foot becomes numb.  (Tr. 40).  Plaintiff also stated that, for approximately fifteen months, she has worn a bone stimulator around her waist to help her back.  (Tr. 38).  The pain also wakes Plaintiff every hour at night when she is trying to sleep.  (Tr. 40).  During the day, she indicated that she lays down for approximately an hour each afternoon to relax her muscles, but does not sleep.  (Tr. 41-42).  Plaintiff also said she cannot concentrate on reading because of her pain.  (Tr. 41).

## II.  <u>STANDARD OF REVIEW</u>

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g) and 1383(c)(3); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance."  <u>Woody v. Sec'y of Health & Human Servs</u>, 859 F.2d 1156, 1159 (3d Cir. 1988).  It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988) (citation omitted).  Not all evidence

is considered "substantial."   For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.   Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g. that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).   The ALJ must make specific findings of fact to support her ultimate conclusions.   Stewart v. Sec'y of Health, Educ., & Welfare, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).   As such, it does not matter if this Court "acting de novo might have reached a different conclusion" than the Commissioner.   Monsour Med. Ctr. V. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)).   "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).   A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)).   In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning. Accordingly,

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ., & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).  A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record [her] reasons for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  If the ALJ fails to properly indicate why evidence was rejected, the court is not permitted to determine whether the evidence was discredited or simply ignored.  See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

### III.  APPLICABLE LAW

#### A.  THE FIVE-STEP PROCESS

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382.  A claimant is considered disabled under the Social Security Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A).  A claimant bears the burden of establishing his or her disability.  Id. § 423(d)(5).  The Social Security Administration has established a five-step process for determining whether an individual is disabled.  20 C.F.R. §§ 404.1520(a) and 416.920(a).

At step one, the Commissioner must determine whether the claimant is currently engaged in

13

substantial gainful activity.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  Substantial gainful activity is work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant and productive physical or mental duties.  20 C.F.R. §§ 404.1572(a) and 416.972(a).  "Gainful work activity" is work that is done (or intended) for pay or profit.  20 C.F.R. §§ 404.1572(b) and 416.972(b).  If an individual engages in substantial gainful activity, he or she is not disabled regardless of how severe his or her physical or mental impairments are.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant establishes that he or she is not currently engaged in such activity, the analysis proceeds to the second step.  Id.

The Commissioner, under step two, must determine whether the claimant suffers from a severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  If an individual does not have a severe medically determinable impairment or combination of impairments, he or she is not disabled.  If the Commissioner finds a severe impairment or combination of impairments, the analysis proceeds to step three.

The analysis under step three requires a determination as to whether the claimant's impairment(s) is equal to, or exceeds, one of those included in the Listing of Impairments in Appendix 1 of the regulations ("Listings").  20 C.F.R. §§ 404.1520(d) and 416.920(d).  Upon such a finding, the claimant is presumed to be disabled and is automatically entitled to benefits.  Id.  If, however, the claimant does not meet this burden, the Commissioner moves to the next step.

Before considering step four, the Commissioner must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  RFC is an individual's

14

ability to perform physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545 and 416.945. A claimant's RFC is based on consideration of all relevant medical and other evidence in the case record. 20 C.F.R. §§ 404.1520(e) and 416.920(e). Once the individual's RFC is determined, the analysis moves to step four.

Step four requires the Commissioner to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant can return to her previous work, then she is not disabled and therefore cannot obtain benefits. Id. If, however, the Commissioner determines that the claimant is unable to return to his or her past relevant work, the analysis proceeds to step five. The fifth, and final, step requires the Commissioner to determine whether the claimant can perform other work consistent with his or her medical impairments, age, education, past work experience and RFC. 20 C.F.R. §§ 404.1520(g) and 416.920(g). If the claimant is not able to do other work and meets the duration requirement, then he or she will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). If the claimant is able to do other work, he or she is not disabled. Although claimant generally continues to have the burden of proving disability at this step, a limited burden is shifted to the Social Security Administration to provide evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do. 20 C.F.R. §§ 404.1512(g) and 416.912(g).

### B.  THE REQUIREMENT OF OBJECTIVE EVIDENCE

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of

disability as defined in this section."  Id.  Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable
> clinical or laboratory diagnostic techniques, which show the existence
> of a medical impairment that results from anatomical, physiological,
> or psychological abnormalities which could reasonably be expected
> to produce the pain or other symptoms alleged and which, when
> considered with all evidence required to be furnished under this
> paragraph . . . would lead to a conclusion that the individual is under
> a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A).  Credibility is a significant factor.  When examining the record,

"the adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's]

symptoms to determine the extent to which the symptoms limit the individual's ability to do basic

work-related activities."  SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186 (SSA July 2, 1996).

To do this, the adjudicator must determine the credibility of the individual's statements based on

consideration of the entire case record.  Id.  The requirement for a finding of credibility is found in

20 C.F.R. § 416.929(c)(4).  A claimant's symptoms, then, may be discredited "unless medical signs

or laboratory findings show that a medically determinable impairment(s) is present."  20 C.F.R. §

416.929(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

## IV.  ANALYSIS

On appeal, Plaintiff argues that the ALJ's decision should be reversed because the ALJ erred

in four respects: in step three, the ALJ did not adequately analyze the evidence (Pl. Br. 13); the

ALJ's decision did not engage in the regulatory-mandated pain evaluation (Pr. Br. 16); in step four,

the ALJ erred in finding that Plaintiff had the residual functional capacity to perform sedentary work

(Pr. Br. 22-23); and in step five, the ALJ improperly concluded that the Commissioner met his

burden of proof (Pl. Br. 31).  In the alternative, Plaintiff requests that this Court remand for a new

hearing.  (Pl. Br. 12).

The Commissioner contends that the ALJ's decision should be affirmed because substantial evidence demonstrates that Plaintiff is capable of engaging in work that exists in significant numbers in the national economy (Def. Br. 4); that the ALJ properly determined that Plaintiff's impairments did not meet or equaled the criteria of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Def. Br. 5); and that the ALJ correctly assessed Plaintiff's residual functional capacity to do sedentary work, including a proper evaluation of the credibility of Plaintiff's subjective complaints (Def. Br. 6).

### A.  SEVERE IMPAIRMENT DETERMINATION - STEP 3

At the third step, the ALJ considers whether a severe impairment or combination of impairments meets or equals one of the listing in Appendix 1 to Subpart P of 20 C.F.R. 404.  The ALJ found that there was "no documented motor, sensory or reflex deficits or spinal cord compromise" pursuant to listing 1.04, "disorders of the spine."[1]  (Tr. 19).  Plaintiff alleges that this was in error and the evidence demonstrates that she does meet the requirements of 1.04A.  (Pl. Br. 15-16).  Specifically, Plaintiff contends that the evidence demonstrates: she has a herniated disc, indicated by a MRI showing indentation of the right S1 nerve root at the L5-S1 level; she suffers from radicular pain and paresthesthias down her right leg into the right foot and down the left leg into the left foot; and that clinical examination shows she has decreased range of motion in forward flexion and positive straight leg raising.  (Pl. Br. 15).  Plaintiff's arguments are without merit.

---

[1]  The ALJ also determined that there was "no indication of any major joint dysfunction" as required by medical listing 1.02, "major dysfunction of a joint(s)."  (Tr. 19).  Plaintiff, however, does not contest that determination on appeal.

Listing 1.04 requires a disorder in the spine, "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." Listing 104, 20 C.F.R. Part 404, Subpart P, Appendix 1 (2010). Listing 1.04A requires further:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04A, 20 C.F.R. Part 404, Subpart P, Appendix 1 (2010).

In the instant case, the ALJ properly weighed the evidence and determined that Listing 1.04 of Part 404, Subpart P, Appendix 1 is not met. Plaintiff's impairment "'must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" Williams, 970 F.2d at 1186 (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). In making his determination, the ALJ properly took into consideration the reports of the medical experts and, while acknowledging that Plaintiff had "impairments that are severe within the meaning of the Regulations," the ALJ determined that those impairments were "not severe enough to meet or medically equal"the requirements of a listed impairment. (Tr. 19). Therefore, given that Plaintiff has met only some, but not all, of the specified medical criteria of Listing 1.04A, the ALJ's determination that Plaintiff did not meet the requirements of the Listing is supported by substantial evidence. See Zebley, 493 U.S. at 530.

## B. PAIN EVALUATION AND ASSESSMENT OF PLAINTIFF'S CREDIBILITY

In determining "the extent to which symptoms, such as pain, affect [a claimant's] capacity to perform basic work activities," the Commissioner's regulations provide that the ALJ will "consider [a claimant's] statements about the intensity, persistence, and limiting effects of [the]

symptoms" and evaluate those statements "in relation to the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).  Further, the ALJ "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence." Id.

Plaintiff contends that the ALJ did not consider the totality of the circumstances in assessing her subjective complaints of pain and improperly found her credibility on the issue lacking.  (Pl. Br. 22).  Specifically, Plaintiff argues that the ALJ, in assessing her subjective complaints, uses "two mutually contradictory computer-generated paragraphs," one finding that the impairment could reasonably be expected to produce the claimed symptoms and one finding that the claims are subjective and without substantial medical basis.  (Pl. Br. 20-21).  The Court disagrees.

The ALJ made two separate findings regarding Plaintiff's subjective complaints of pain, which are not contradictory.  First, the ALJ determined that Plaintiff's alleged impairment could reasonably produce the symptoms asserted.  (Tr. 20).  The ALJ, however, then did not find the asserted "intensity, persistence and limiting effects of these symptoms" to be credible.  Id.  The ALJ found Plaintiff's claims of the intensity, persistency, and limiting effect of her pain to be inconsistent with her testimony, as well as with the assessment of Plaintiff's treating chiropractor.  (Tr. 20-21).  Therefore, the ALJ determined that Plaintiff's statements were not credible, to the extent they were inconsistent with the residual functional capacity assessment.  (Tr. 20).

The ALJ, thus, properly considered the weight of the evidence in making his determination that "[a]lthough the assertions of pain are reasonable to a degree, the overall record does not support them to the debilitating extent asserted."  (Tr. 20-21).

19

## C.  Residual Functional Capacity Determination - Step 4

Plaintiff contends that the ALJ's RFC determination lacked evidentiary support. (Pl. Br. 26). Specifically, Plaintiff argues that as a result of her fusion surgery, she is unable to perform sedentary work, even at a job where she can alternate standing and sitting at her discretion, as the ALJ found. (Pl. Br. 26; Tr. 19).  Plaintiff also contends that the pain she experiences significantly hinders her ability to concentrate, and therefore, the ALJ should not have determined that she can perform "simple repetitive tasks."  (Pl. Br. 27; Tr. 19).   Additionally, Plaintiff claims that the ALJ's hypothetical question to the vocational expert did not account for all of Plaintiff's credibly established mental limitations.  (Tr. 28-30).  To the extent that the ALJ did not explicitly weigh the significance of Plaintiff's surgery and its post-operative effect or Plaintiff's physical therapy, Plaintiff's arguments have merit.

The residual functional capacity judges the extent of work that a claimant may perform in light of her impairments.  20 C.F.R. §§ 404.1545 and 416.945.  The ALJ must determine a claimant's RFC upon consideration of all relevant evidence in the record.  20 C.F.R. §§ 404.1527(e)(2),   404.1546, 416.927(e)(2), and 416.946.  The regulations mandate an ALJ to "consider [a claimant's] ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. §§ 404.1545(a)(4) and 416.945(a)(4).

The ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." Jones v. Barnhart, 364 F.3d at 505.  The decision, when read in its entirety, must provide sufficient development of the record and explanation of the findings.  Id.

### 1.  Assessment of Physical Abilities

In determining the extent of a claimant's physical abilities, the ALJ must first assess "the

nature and extent of [a claimant's] physical limitations" and then determine the claimant's "residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b) and 416.945(b). "A limited ability to perform certain physical demands . . . [including] sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . may reduce [a claimant's] ability to do past work and other work." 20 C.F.R. §§ 404.1545(b) and 416.945(b). The regulations define sedentary work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a) and 416.967(a). Furthermore, "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Id. Plaintiff contends that she is unable to perform sedentary work, even if the job permits her to stand and sit at her discretion, and that the evidence did not support such a determination by the ALJ. (Pl. Br. 26).

The ALJ did not assign full credibility to Plaintiff's claims regarding the extent of and the intensity of her pain and the way it limited her daily activities. The ALJ primarily relied on conflicting December 2005 and February 2006 reports from Dr. Orlikowski, Plaintiff's chiropractor, as well as a September 19, 2006 evaluation by Disability Determination Services. The ALJ was within his duties to assign weight and credibility in rejecting some of the conflicting evidence. See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) ("When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must, however, provide some reason for discounting that evidence. Id. (citing Stewart, 714 F.2d at 290).

21

The ALJ did not err by failing to credit the conflicting reports from Dr. Orlikowski.  (Tr. 21).

Dr. Orlikowski assessed Plaintiff in February of 2006 and determined she was unable to work, in part

because she was unable to sit for 30 minutes.  (Tr. 21, 209).  However, the ALJ noted that this

assessment conflicted with a Letter of Disability that Dr. Orlikowski issued on December 4, 2005,

which indicated that Plaintiff could return to work.  (Tr. 21, 216).  Further, the ALJ found that Dr.

Orlikowski's February 2006 evaluation conflicted with Plaintiff's function report from February 6,

2006.  (Tr. 21, 118-125).

"In making a residual functional capacity determination, the ALJ must consider all evidence

before him."  Burnett, 220 F.3d at 121.  An ALJ must give "not only an expression of the evidence

s/he considered which supports the result, but also some indication of the evidence which was

rejected.  In the absence of such an indication, the reviewing court cannot tell if significant probative

evidence was not credited or simply ignored."  Cotter, 642 F.2d at 705.

In the present case, the ALJ appears not to have weighed or evaluated evidence from after

Plaintiff's March 23, 2007 fusion surgery, either as supporting or contradictory evidence of

Plaintiff's claim.  Instead, the ALJ relied entirely on medical evaluations from before the fusion

surgery.  (Tr. 21).  In making the RFC determination, the ALJ did not weigh the effects and impact

of the surgery on Plaintiff's pain and ability to perform sedentary work, nor did the ALJ consider the

extensive physical therapy notes, spanning approximately four months, in making his decision.  The

ALJ briefly noted that Plaintiff had surgery and underwent physical therapy in his discussion of

Plaintiff's prior medical history (Tr. 19), but when making the RFC determination he did not

mention the surgery and its effects, or the physical therapy.  The ALJ, instead, focused on the pre-

surgery evaluations by Dr. Orlikowski and Dr. Vasallo (for Disability Determination Services).  (Tr.

21).   Without an explicit discussion on whether Plaintiff's claims of post-surgery pain and limitations were valid, and what weight was given to Dr. Petersen's post-operative evaluations and the four months of physical therapy reports, the ALJ's RFC assessment was not as "comprehensive and analytic as feasible."  See Cotter, 642 F.2d  at 706.

The purpose of a comprehensive discussion of the RFC evaluation  is to allow the reviewing court to properly conduct the necessary judicial review.  "[U]nless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quotations omitted);  see also Cotter, 642 F.2d at 704-05 ("There are cogent reasons why an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests.  Chief among them is the need for the appellate court to perform its statutory function of judicial review.").

Given that much of Plaintiff's claim of limited working capability stems from the pain and movement restrictions associated with the titanium rings fused in her back, it was not comprehensive for the ALJ to fail to give any indication as to how Plaintiff's post-surgery complaints, Dr. Peterson's post-operative evaluations, and the four months of physical therapy factored into the RFC determination.  This Court is not in a position where it can determine whether "'significant probative evidence was not credited or simply ignored.'"  See Burnett, 220 F.3d at 121 (quoting Cotter, 642 F.2d at 705).

### 2.  Hypothetical Question Posed to Vocational Expert

Plaintiff argues that the ALJ erred by not including all of Plaintiff's credible limitations in

the hypothetical question submitted to the vocational expert. (Pl. Br. 26-27). Specifically, Plaintiff alleges that her pain precluded her from performing sedentary work with the discretion to stand, and that the ALJ's use of "simple and repetitive tasks" was too vague and contrary to Plaintiff's credible pain limitation. (Tr. 171; Pl. Br. 26-28). The Commissioner contends that the ALJ did not need to give explanations of reasonably rejected limitations in posing the hypothetical question to the vocational expert. (Def. Br. 12). Taking into account this Court's determination that the ALJ's RFC evaluation was not comprehensive, Plaintiff's arguments have merit.

An ALJ is not required "to submit to the vocational expert every impairment *alleged* by a claimant. Instead the directive in <u>Podedworny</u> is that the hypotheticals posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 543-44 (3d Cir. 2005) (quoting <u>Podedworny v. Harris</u>, 745 F.2d 210, 218 (3d Cir. 1984)). "[T]he ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." <u>Id.</u> The Third Circuit has established guidelines to determine whether a limitation has been credibly established.

> Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response. Relatedly, the ALJ may not substitute his or her own expertise to refute such record evidence. Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible-the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason. Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no

objective medical evidence to support it.

Rutherford, 399 F.3d at 554 (quotations and citations omitted).

Given the deficiencies in the ALJ's explanation for his determination of Plaintiff's RFC, specifically what weight, if any, Plaintiff's fusion surgery and post-operation physical therapy had in the analysis, it is unclear whether the ALJ properly included all of Plaintiff's credibly established limitations to the vocational expert.  This Court is unable to determine from the ALJ's evaluation whether Plaintiff's claimed limitations and pain resulting from her surgery were either "medically supported and otherwise uncontroverted in the record," which would "preclude reliance on the [vocational] expert's response," because they were not included in the posed hypothetical question, or whether the claims lacked objective medical evidence, which the ALJ could properly reject due to conflicting evidence in the record.  See Rutherford, 399 F.3d at 554.  The ALJ, in making his RFC determination, rejected part of Plaintiff's testimony as lacking credibility because it conflicted with the medical evidence on the record.  All the medical evidence discussed, however, was prior to Plaintiff's surgery.  Therefore, it is not clear whether the ALJ considered Plaintiff's post-surgery claims of limitations in light of the post-surgery medical evidence when submitting the hypothetical question to the vocational expert.

### D.  Commissioner's Burden of Proof - Step 5

Plaintiff contends that the Commissioner did not bear his burden of proof of showing substantial evidence supporting his determination.  (Pl. Br. 31).  Specifically, Plaintiff argues that since the ALJ did not discuss Plaintiff's surgery and the resulting pain  and limitations on her movement, the hypothetical posed to the vocational expert was faulty, and therefore, the Commissioner has not met his burden of proof.  Id.  In light of the incomplete RFC determination

at step four, this Court agrees.

The Third Circuit has declared that there are two ways, in which, a Plaintiff at step five can challenge the validity of ALJ's reliance on the vocational expert's testimony:

> (1) that the testimony cannot be relied upon because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment, or (2) that the testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert.

Rutherford, 399 F.3d at 554 n.8.  The second argument is "best understood as [a] challenge[] to the RFC assessment itself."  Id.

As discussed above, the ALJ did not weigh or evaluate Plaintiff's claims of pain and restricted movement following her back surgery, nor whether the physical therapy reports either supported or contradicted Plaintiff's allegations in making his RFC determination.  Based on the his RFC determination, the ALJ submitted a hypothetical question to the vocational expert without mentioning any potential post-surgery restrictions on Plaintiff, however, the ALJ's analysis did not discuss whether these claims of pain and limitations by Plaintiff were credibly established or lacked objective medical evidence.  Therefore, this Court finds that the Commissioner has not met his burden of proof and the ALJ could not properly rely on the vocational expert's testimony.

## V.  **CONCLUSION**

For the reasons stated, the final decision entered by ALJ O'Leary is **reversed** and this matter is remanded for further proceedings consistent with this Opinion.  An appropriate order follows this opinion.

 S/ Dennis M. Cavanaugh

Dennis M. Cavanaugh, U.S.D.J.

Date:            March   17  , 2011
cc:              All Counsel of Record
Original:        Clerk's Office

26